**IN THE COURT OF APPEALS OF IOWA**

No. 15-1019
Filed September 23, 2015

**IN THE INTEREST OF T.C., T.C., AND T.C.,**
**Minor Children,**

**T.G., Mother,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, District Associate Judge.

The mother appeals the termination of her parental rights to three of her children. **AFFIRMED.**

Bryan Tingle, Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John Sarcone, County Attorney, and Christina Gonzalez, Assistant County Attorney, for appellee State.

M. Kathryn Miller of the Polk County Juvenile Public Defender, Des Moines, attorney and guardian ad litem for minor children.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, Judge.**

The mother appeals the termination of her parental rights to three of her children. She asserts the State failed to establish by clear and convincing evidence her rights should be terminated pursuant to Iowa Code section 232.116(1)(d) and (e) (2013), and that termination is not in their best interests. We conclude the district court properly terminated the mother's parental rights pursuant to paragraph (e), as she has not maintained a place of significance in the children's lives and has not made a reasonable effort to resume care, despite being given the opportunity to do so; additionally, due to the mother's inability to care for the children, termination is in their best interests. Consequently, we affirm the order of the district court terminating the mother's parental rights.

T.C.-1, born February 2005, T.C.-2, born August 2006, and T.C.-3, born May 2007, were removed from the mother's care in 2010.[1] The children were adjudicated in need of assistance (CINA), and prior termination-of-parental-rights petitions were filed, but were later dismissed.[2] Following the dismissals, the permanency goal was changed to a guardianship, continuing placement with the paternal grandmother. The matter was transferred to probate court and, subsequently, the CINA case was closed. The children have never been returned to the mother's care.[3]

---

[1] A fourth, older child, T.T., is in relative placement and is not subject to these proceedings.

[2] The department of human services (DHS) worker noted the petitions were dismissed because of concerns that a different case plan for T.T. could conflict with the case plans for the younger children. Consequently, it was determined that placement with the guardian was optimal for these children.

[3] The children stayed with the mother for just a couple of days during the grandmother's illness, and before the CINA adjudication and their placement in foster care.

In the spring of 2014, the grandmother became ill and could no longer care for the children.[4] She signed a consent to their removal on April 18, 2014, and the children were placed in a foster home. Following an uncontested hearing, the district court filed a removal order on April 28, 2014, confirming DHS custody, with foster placement. Upon stipulation of the parties, the children were adjudicated in need of assistance at a June 5, 2014 hearing.

Since 2010, the mother has not provided financial support for the children, other than occasionally buying gifts, an item of clothing, or bringing food to a visit. Though the mother was provided weekly visitation prior to the current proceedings, the visits were reduced on the advice of the children's therapist. DHS continued with this visitation schedule upon the commencement of the present CINA case, and the mother had one-hour supervised visits with the children once each month.

The mother struggles with mental health issues, maintaining a stable residence, and keeping unsafe individuals from the children. The mother has been diagnosed with mild mental retardation, and her sole source of income is through disability payments. Additionally, throughout the pendency of these proceedings, she has failed to maintain a stable residence, instead moving frequently and living with friends or relatives for short periods of time. Though she was living in an apartment at the time of the termination hearing, it was a one-room efficiency, and she had only resided there since January 2015. The mother also continues to associate with the father—who has physically abused the mother and has alcohol and drug abuse problems—as well as other

---

[4] The grandmother passed away in June 2014.

individuals who pose a danger to the children. Moreover, during the brief time the children were residing with the mother during the grandmother's illness, the mother allowed the children to be around these people.

The children have significant behavioral and developmental issues, which the mother has long been unable to address. Specifically, the DHS worker noted the mother:

> [Does not have] an idea of what the kids have in relation to their needs. All three of the children have some issues in school and some developmental delays. All three of the kids have demonstrated sexual acting out. There are concerns that [T.C.-3] has some significant cognitive delays. The level of care that these children need is beyond that of normal parenting. They need additional structure and boundaries to keep them safe. [The mother] is able to be a support for the kids but long term has not demonstrated she has an understanding of their needs or the long term capability to care for them.

The following services were offered to the family during the pendency of these and the prior CINA proceedings: parenting classes; drug screens; Children Protective Assessment services; behavior, health intervention services (BHIS) for the children; relative placement; foster care; individual therapy; domestic abuse services; visitation; family safety, risk, and permanency services; guardianship; shelter care; speech therapy for the boys; occupational therapy; sibling visitation; and referrals for housing assistance.

Due to the mother's inability to care for the children, the State filed a petition to terminate the mother's parental rights on December 9, 2014. A contested hearing was held on February 12 and March 5, 2015. On May 29,

2015, the district court ordered the termination of the mother's parental rights pursuant to Iowa Code section 232.116(1)(d) and (e).[5]  The mother appeals.

We review termination proceedings de novo.  *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999).  The grounds for termination must be proved by clear and convincing evidence.  *Id.*  Our primary concern is the child's best interest.  *Id.* When the court terminates parental rights on more than one statutory ground, we only need to find grounds to terminate under one of the sections cited by the court to affirm.  *Id.*

To terminate parental rights pursuant to Iowa Code section 232.116(1)(e), the State must establish:

> The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
> There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so.  For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent.  This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

Iowa Code section 232.116(1)(e)(1)–(3).

The mother argues that, because the court waived reasonable efforts in October 2014, she was penalized by having her parental rights terminated.

---

[5] The district court also terminated the father's parental rights; however, he does not appeal.

Specifically, she asserts she was not given an opportunity to reunite with the children, due to the lack of services that were offered by the State preceding the current termination petition. *See* Iowa Code § 232.116(1)(e)(3). The only request the mother has made is for additional visitation.

The mother is correct that reasonable services must be offered before her parental rights may be terminated under paragraph (e). *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (noting the State must make reasonable efforts to return the children to the parent's care before parental rights may be terminated). However, in its October 10, 2014 order, the district court found:

> [G]iven the extended time and extensive services that have previously been provided, coupled with the evidence those same concerns still exist, it is not likely that the continued offer or receipt of services would correct the issues that led to removal and adjudication in a reasonable period of time.

In addition, the district court stated in the November 6, 2014 CINA permanency order:

> The Court inquired of the parties as to the sufficiency of services being provided and whether additional services are needed to facilitate the safe return of the children to the home. Based on this inquiry, the Court finds no additional services were requested by the parties.
> **The Court advised the parties that failure to identify a deficiency in services may preclude the party from challenging the sufficiency of services in a termination of parental rights proceeding.**

(Emphasis in original). Based upon this record, and the court's findings that no additional services were requested, the mother's claim that a lack of recent services led to the termination of her parental rights is without merit. *See id.*

Furthermore, upon our de novo review of the record, we agree with the district court the mother's rights may be terminated under paragraph (e), as she

has not maintained a place of importance in the children's lives, despite given the opportunity to do so. The children have been out of the mother's care since 2010, and as the district court noted:

> While services have not been directed at Mother since October of 2014, she has still had the opportunity to participate in services and could have sought a more active parenting role by doing things such as contacting their therapist, making an effort to understand [the children's] needs, obtaining employment, [and] obtaining stable housing but failed to do so.

These actions do not amount to an affirmative duty on behalf of the parent to maintain significant and meaningful contact with the children. *See* Iowa Code § 232.116(1)(e)(3). The mother continued to be limited to supervised visitation. She has failed to financially support them, in addition to being unable to pull her life together enough to parent the children. Moreover, the children have been out of her care for the majority of their lives. Consequently, we agree with the district court's conclusion the mother's parental rights should be terminated under paragraph (e).

Termination of the mother's parental rights is also in the children's best interests. As the district court noted:

> [The mother] continues to maintain relationships with unsafe and unhealthy persons, she lacks stable and appropriate housing, she lacks insight into the children's mental health and physical needs, she lacks the ability to support them financially, lacks the ability to problem solve, and lacks the ability to set and maintain boundaries. Given Mother's own limited mental capacity, there is no reason to believe that additional time or services would result in a different outcome.

The record supports this finding, and it is clear the children cannot be returned to her care. Significantly, the children have been out of the mother's care since 2010, and yet, as of the date of the termination hearing, the mother

was still unable to care for herself, let alone care for the children. It is clear even more time would not correct the situation. Moreover: "We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998); *see also* Iowa Code § 232.116(2). The children need stability and a safe environment, in which they are adequately parented, and the mother cannot provide this. Furthermore, while the mother contends the three children should remain together, they were all placed in the same foster home where their behaviors and functional abilities have greatly improved.

For these reasons, we conclude termination of the mother's parental rights is proper under paragraph (e), and that it is in the children's best interests to do so. Consequently, we affirm the district court's termination of the mother's parental rights to her children, T.C., T.C., and T.C.

**AFFIRMED.**